**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LAYNA TYUS FERNANDEZ,

        Plaintiff,

v.                                                                                          CASE NO. 2:13-cv-12304

HARTFORD LIFE AND ACCIDENT                                 HON. MARIANNE O. BATTANI
INSURANCE COMPANY,

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD, GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON ITS COUNTERCLAIM, AND AFFIRMING THE DECISION OF THE PLAN ADMINISTRATOR**

This matter is before the Court on Defendant Hartford Life and Accident Insurance Company's ("Hartford") Motion for Judgment on the Administrative Record. (Doc. 10). Plaintiff Layna Tyus Fernandez, who previously challenged Hartford's termination of long-term disability benefits, does not oppose the instant motion. For the reasons stated below, Defendant's motion for judgment on the administrative record is **GRANTED**, Defendant's motion for judgment on its counterclaim for overpayment of benefits is **GRANTED**, and the decision of the plan administrator is **AFFIRMED**.

**I.     STATEMENT OF FACTS**

    **A.     Background**

Plaintiff Layna Fernandez worked as an Education Chair for Corinthian Colleges Inc., an office position involving student instruction and faculty evaluation. In accordance with the Employee Retirement Income Security Act ("ERISA"), Corinthian

provides its employees a long-term disability insurance plan (the "Policy"), which is issued and administered by Hartford. Hartford acts as the Policy fiduciary and has full discretionary authority in determining benefits eligibility. (A.R. 89, 92).

In order to qualify for long-term disability ("LTD") benefits, an employee must "furnish proof to [Hartford] that [she] remain[s] Totally Disabled" and is "under the care of a Physician." (A.R. 29). "Totally Disabled" is defined in the Policy accordingly:

> [D]uring the Elimination Period and for the next 24 month(s), as a result of injury or sickness, You are unable to perform with reasonable continuity the Essential Duties necessary to pursue Your occupation in the usual or customary way. After that, as a result of injury or sickness You are unable to engage with reasonable continuity in Any Occupation.

(A.R. 25). The "Elimination Period" requires a claimant to be disabled for 180 days before benefits are payable. (A.R. 10). The Policy defines "Any Occupation" as "an occupation in which You could reasonably be expected to perform satisfactorily in light of Your age, education, training, experience, station in life, and physical and mental capacity." (A.R. 22). It is the claimant's burden to continually furnish proof of Total Disability sufficient for payment of benefits. (A.R. 13).

In July 2010, Fernandez began complaining of right knee, neck, and shoulder pain resulting from moving boxes at work and stopped working. She visited her family physician, Dr. Laurie Katz, on August 2, 2010, and reported similar pain, including pain resulting from a recent knee surgery. Fernandez also visited Dr. Eric Kovan for back pain. After the requisite Elimination Period, Fernandez applied for and received LTD benefits beginning on January 30, 2011. On October 3, 2012, Fernandez applied for and received Social Security Disability ("SSD") benefits retroactively payable from June 30, 2010. On December 18, 2012, after an investigation, Hartford determined that

Fernandez no longer satisfied the Policy definition of Total Disability and terminated her LTD benefits.  Although Fernandez appealed, Hartford affirmed its prior decision.  This lawsuit followed.  Based on Fernandez's receipt of SSD benefits, Hartford filed a counterclaim to recover an alleged overpayment of benefits.

      B.      **Medical Evidence**

Dr. Laurie Katz examined Fernandez on August 2, 2010.  Katz noted that Fernandez complained of back pain caused by moving boxes at work.  (A.R. 556).  She also complained of pain in her right knee and muscle spasms.  In her notes, Katz remarked that Fernandez had chronic radiculitis and fibromyalgia.  (A.R. 557).  In November 2010, Katz noted that Fernandez continued to experience back, knee, and neck pain.  (A.R. 560).

On August 25, 2010, Fernandez visited Dr. Eric Kovan for her back pain.  Kovan treated her once a month for several months.  At the first visit, Kovan found that Fernandez had right L5 radiculopathy in her lumber spine and right knee pain.  (A.R. 450).  He recommended epidural injections, physical therapy, and prescribed her Fexeril for pain.  Kovan also noted that her neurological examination was normal.  Two months later on October 20, 2010, Fernandez returned for a follow up examination.  Kovan noted that the epidural injections helped decrease pain by 40%.  (A.R. 445).  A couple months later, Fernandez underwent an MRI, which revealed "positive disc herniation."  (A.R. 435).  However, by the end of March 2011, Kovan noted that Fernandez "is doing really well with the last injection" and "[o]verall, she has improved."  (A.R. 434).  He also noted that her knee and neck pain were improving.  In May 2011,

3

Kovan recommended that Fernandez continue to undergo physical therapy and that she "needs long-term disability." (A.R. 433).

Fernandez continued to see Dr. Kovan for several months. At the September 30, 2011 visit, she began to complain of headaches. (A.R. 426). In October 2011, Kovan completed an Attending Physician's Statement of Functionality ("APS"). (A.R. 518-19). The APS indicated that Fernandez could sit, stand, or walk for two hours at a time. (A.R. 519). Kovan also noted that she could occasionally carry up to ten pounds and that he expected her to return to work by February 2012. In February 2012, the headaches subsided, and Kovan noted that her back was stable. (A.R. 420). The next month, Kovan stated that she was "doing much better" and that her knee pain had improved along with her headaches. (A.R. 418).

On January 19, 2012, Fernandez completed a telephone interview with Hartford representative Lori Niehues-Schneider, referred to as the "milestone call." (A.R. 157-58). Fernandez reported back spasms, trouble sleeping, and migraines. (A.R. 157). In terms of functionality, she stated that she can walk for about fifteen minutes until the spasms start, can only sit for a half hour at a time, and that her family takes care of the laundry. She also noted that on bad days, she has to stay in bed all day. On good days she still has to stay inside the house.

In April 2012, Hartford hired an investigator to conduct surveillance of Fernandez. (A.R. 396-409). The investigation revealed Fernandez "walking, driving, pumping gas, bending at the waist, carrying garbage bags, pulling weeds, babysitting an infant, and otherwise moving without any sign of abnormal gait, struggle or difficulty." (Doc. 10 at

4

9).  Hartford included the relevant video footage of Fernandez with its brief, which confirmed the above findings.

Subsequently, Hartford conducted an in-person interview with Fernandez.  (A.R. 359-65).  Fernandez, accompanied by her attorney, identified herself in the surveillance videos.  She claimed that the videos reflected her on a "good day."  (A.R. 365).  In addition, Fernandez remained seated for the full two and a half hour interview, save for two two-minute breaks to stand.  (A.R. 361).

In August 2012, Hartford forwarded the videos to Dr. Kovan for comment.  (A.R. 229-30).  A month later, Dr. Kovan responded and agreed that Fernandez could work while seated, with occasional walking and standing, and full use of upper extremities.  (A.R. 355).  He also agreed that lifting or carrying should be limited to ten pounds and that she could return to work for twenty hours a week.

At the request of Hartford, Fernandez underwent an independent medical examination ("IME") by Dr. Saul Weingarden on September 25, 2012.  (A.R. 336-47).  Weingarden reviewed Fernandez's medical records and the surveillance video.  In his IME, Weingarden noted several inconsistencies and exaggerations by Fernandez regarding her symptoms, including her refusal to allow Weingarden to examine her neck because of a headache, but then moving her neck in all directions during other parts of the exam.  (A.R. 344).  Although Fernandez claimed she could not bend at the waist, Weingarden noted that "when she positioned herself into the long sitting position she was able to sit fully upright and lean forward, just beyond neutral, without any complaints of discomfort."  (A.R. 345).  Weingarden also noted that "at other points when she was not being examined, but being observed without her realizing it, she was

5

doing the things that she indicated she could not do." (A.R. 346). Contrary to Fernandez's report, documentation indicated that she had preexisting back conditions stemming from 2005. In addition, Fernandez stated she could not walk on grass or do any gardening or pulling weeds, which was contradicted by the surveillance video. Based on the chronic preexisting degenerative changes in her lower back, Weingarden recommended no heavy lifting over twenty-five pounds and no frequent bending at the waist.

On December 5, 2012, Maggie White, Hartford's rehabilitation case manager, issued an Employability Analysis Report ("EAR"). (A.R. 293-301). Taking into account Fernandez's education, training, work history, and functional limitations outlined in Weingarden's IME, the report indicated that Fernandez was readily employable for several occupations. (A.R. 295). The EAR also indicated that she could perform her previous job with Corinthian. Consequently, Hartford determined that Fernandez was no longer disabled under the Policy.

## II.   STANDARD OF REVIEW

Motions for judgment on the administrative record in an ERISA action are not akin to motions for summary judgment under Fed. R. Civ. P. 56(a). See Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 618 (6th Cir. 1998) ("This standard of review does not neatly fit under either Rule 52 or Rule 56, but is a specially fashioned rule designed to carry out Congress's intent under ERISA."). Accordingly, a district court reviews an ERISA plan administrator's denial of benefits *de novo* unless the plan grants the administrator discretionary authority to determine eligibility for benefits. Cox v. Standard Ins. Co., 585 F.3d 295, 299 (6th Cir. 2009) (citing Gismondi v. United

Techs. Corp., 408 F.3d 295, 298 (6th Cir. 2005)).  If the plan gives the administrator discretionary authority, a court applies the highly deferential "arbitrary and capricious" standard of review.  Id.

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action.  When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."  Schwalm v. Guardian Life Ins. Co. of America, 626 F.3d 299, 308 (6th Cir. 2010) (internal quotation marks omitted) (quoting Shields v. Reader's Digest Ass'n, Inc., 331 F.3d 536, 541 (6th Cir. 2003)).  Even when a claimant has introduced evidence that might be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits because of the plan's provisions, then the decision is neither arbitrary nor capricious.  Id. (citing Williams v. Int'l Paper Co., 227 F.3d 706, 712 (6th Cir. 2000)).  Therefore, a reviewing court must uphold the administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence."  Baker v. United Mine Workers of Am. Health & Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991).

Fernandez does not dispute that the Policy grants Hartford discretionary authority over benefits eligibility determinations.  Indeed, the Policy provides that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy."  (A.R. 92).  Consequently, the highly deferential arbitrary and capricious standard applies.

## III. ANALYSIS

Hartford argues that its decision to terminate benefits is not arbitrary and capricious because it is reasonably based on the medical evidence. In addition, Hartford seeks to recover $29,988 in overpayment of benefits because Fernandez received SSD benefits. Hartford claims that the Policy provides for an offset of SSD benefits and that Fernandez knew about the provision when she applied for SSD benefits. Notably, Hartford's motion is unopposed by Fernandez.

### A. Decision to Termination LTD Benefits

Hartford's decision to terminate benefits will be affirmed if it is based on substantial evidence in the record and is the result of a deliberate, principled reasoning process. See Baker, 929 F.2d at 1144. Here, there is substantial evidence to support Hartford's determination that Fernandez is not Totally Disabled under the Policy. Dr. Kovan's office notes indicate that Fernandez's ailments improved throughout the course of treatment. He also agreed that she could return to work for twenty hours a week. In addition, Dr. Weingarden's IME concluded that Fernandez exaggerated the severity of her symptoms and noted several inconsistencies in her complaints in relation to the clinical findings. Perhaps most conclusive, the surveillance video unequivocally shows Fernandez gardening, lifting trash bags and other items, walking around with no apparent difficulty, driving, and performing all the normal daily activities of living. The videos completely contradict Fernandez's claims of limited functionality. In addition, Fernandez offered no evidence to dispute Weingarden's IME and failed to meet her burden of continually establishing that she was Totally Disabled under the Policy.

The fact that Fernandez obtained SSD benefits does not undermine Hartford's decision to terminate benefits.  Hartford notified Fernandez that the Social Security Administration standards are different from those under the Policy.  In the termination letter, Hartford properly explained the difference between the two standards and provided sufficient explanation for its decision.  See DeLisle v. Sun Life Assur. Co of Canada, 558 F.3d 440, 445-46 (6th Cir. 2009) (noting that a finding of disability by the Social Security Administration does not "automatically entitle[] [a claimant] to benefits under an ERISA plan, since the plan's disability criteria may differ from the Social Security Administration's.").  Although the Social Security Administration deemed Fernandez disabled, Hartford was entitled to make its own determination in accordance with the Policy.

In sum, the record strongly supports Hartford's decision to terminate LTD benefits.  The decision was the result of a deliberate, principled reasoning process, given the fact that Hartford strictly followed the Policy's procedure for termination and thoroughly investigated Fernandez's medical condition.  Fernandez did not provide any evidence to the contrary.  Therefore, because Hartford's decision is not arbitrary and capricious, the decision is upheld.

### B. Counterclaim for Overpayment of Benefits

Hartford's counterclaim to recover overpaid benefits is not entitled to deferential review, but is appropriately analyzed as a motion for summary judgment pursuant to Rule 56(a).  See Lee v. Kaiser Found. Health Plan Long Term, 2012 WL 664733 *2 (N.D. Cal. February 28, 2012) (noting that "because [defendant's] counterclaim does not implicate the denial of long-term disability benefits . . . the Court finds it appropriate to

9

treat the present Motions as motions for summary judgment"). Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The Policy provides that an overpayment occurs "when it is determined that the total amount we have paid in benefits is more than the amount that was due to You under the plan," including a "retroactive award[] of Other Income Benefits." (A.R. 21). "Other Income Benefits" are defined in the Policy as "the amount of any benefit for loss of income, provided to You as a result of the Disability for which You are claiming benefits under this plan." (A.R. 22). Other Income Benefits include awards of SSD benefits. (A.R. 23). The Policy provides that the claimant must refund any amount of overpayment. (A.R. 21).

Fernandez does not dispute that she received an overpayment of benefits based on her award of SSD benefits and does not dispute that the Policy requires her to refund the overpaid benefits. It is clear that Fernandez understood the terms of the Policy and consented to the terms when she applied for workers' compensation benefits in August 2012. (A.R. 412). During a nearly two-year period, Hartford paid Fernandez $63,333 in LTD benefits. (Doc. 10, Ex. A). In the same period, Fernandez received

10

$33,345 in SSD benefits. (A.R. 303). Thus, given the unequivocal terms of the Policy providing for an offset of Other Income Benefits, there is no genuine dispute of fact and Fernandez must refund $29,988 in overpaid benefits to Hartford.

## IV.   CONCLUSION

Accordingly, Defendant's motion for judgment on the administrative record is **GRANTED**, Defendant's motion for judgment on its counterclaim for overpayment of benefits is **GRANTED**, and the decision of the plan administrator is **AFFIRMED**.

**IT IS SO ORDERED.**

                                        s/Marianne O. Battani
                                        MARIANNE O. BATTANI
                                        UNITED STATES DISTRICT JUDGE

DATE: March 28, 2014

### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Order was served upon all parties of record via the Court's ECF Filing System.

                                        s/Bernadette M. Thebolt

                                        Case Manager